{¶ 22} Defendant-Appellant makes the following contentions at p. 12 of his appellate brief:
 {¶ 23} "There is no indication that Det. Lord was ever able to identify or even attempted to identify particular contraband or evidence of a crime that he believed would be found at the locations suggested. There is absolutely no indication that Mark Sells even lived at 411 South Second Street or had any access to the identified Ford Probe automobile. It is merely listed in the search warrant as a place to searched. Nor was there any other indication that 411 South Second Street was linked in any way to the offense. Finally, there was absolutely nothing in the affidavit indicating that evidence of such an offense would probably be found at 411 South Second Street."
 {¶ 24} These contentions may, as Judge Brogan writes, be taken as a complaint of "staleness." However, I believe they are offered more in relation to the fundamental question of whether the affidavit portrays any connection at all between the premises to be searched and the crime that was committed, such that evidence of the crime probably will be found there.
 {¶ 25} Officer Lord's written affidavit states that Sharid E. Gantz was the victim of a homicide at his residence, that Bobby Barrett told Lord that he, Bobby Barrett, Chris Cassidy, and Mark Sells committed the crime, and that the motive for the crime was robbery. Barrett's reliability is supported by his further statement to Lord that Sells had smoked Camel Golds cigarettes while standing outside the victim's home, coupled with Lord's statement that several cigarette butts of that description were found in that location.
 {¶ 26} Officer Lord's affidavit also states that Barrett told him that it was Mark Sells who killed the victim by striking him repeatedly in the back of his head with a baseball bat. The affidavit states that a baseball bat was found at the scene. However, in his sworn oral statement Officer Lord testified that forensic tests that could connect the baseball bat with the crime had not yet been completed.
 {¶ 27} The written affidavit identifies property which would be the subject of the search as that identified in item III of the search warrant: "Hair, blood, human tissue, any object capable of inflicting death or serious physical harm, shoes, clothing, criminal tools, United States currency, glass fragments, pornographic pictures, polaroid pictures, and any and all property stolen from Sharid E. Gantz."
 {¶ 28} The affidavit doesn't specify what property may have been stolen from Mr. Gantz. It was later shown that Sells may have shown the photographs to the others after the crime, but the affidavit doesn't say so. Currency is generic, and the "criminal tools" to which the affidavit refers lacks particularity and any connection with the crime alleged. However, in view of the nature of the vicious beating Mr. Gantz suffered, allegedly inflicted by Mark Sells, it is reasonable to believe that Gantz's hair, blood, and/or bodily tissue might be found on clothing that Mark Sells wore. Therefore, probable cause to connect Sells' shoes and clothing to the crime was sufficiently portrayed.
 {¶ 29} What is not portrayed, at least not expressly, is any connection between Mark Sells and 411 South Second Street, the place to be searched. The affidavit refers to the warrant, which sets out a detailed description of the exterior of that location. However, none of those matters connects Mark Sells to it, and neither does the affidavit, the sworn testimony, or the proposed warrant, in any other way.
 {¶ 30} To suppress the evidence that was seized from 411 South Second Street from use by the State in its prosecution of Sells for that reason would, however, elevate form over substance to an unwarranted extent. The only logical reason to search the premises for property of the kind the warrant identifies in connection with the investigation of Sells' involvement in the murder of Gantz would be because Sells resides at 411 South Second Street. The issuing judge could reasonably draw that inference. And, while we review the probable cause issue de novo, we should give due respect to the weight and independence of the issuing judge's determination, and not reverse absent some substantial ground for finding that probable cause is lacking. That simply isn't shown by this particular defect.